FILED
JAMES J. VILT, JR. - CLERK

AUG - 3 2022

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) No. | 3:22-CR-85-CRS |
| | ) | |
| | ) | 18 U.S.C. § 242 |
| | ) | 18 U.S.C. § 371 |
| JOSHUA JAYNES and KYLE MEANY, | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. § 1519 |
| Defendants. | ) | |

# INDICTMENT

THE GRAND JURY CHARGES:

### Introduction

At times material to this Indictment:

1.  Breonna Taylor was a 26-year-old woman from Louisville, Kentucky, who, as of March 2020, had lived for several years at 3003 Springfield Drive, Apartment 4.

2.  The Louisville Metro Police Department (LMPD) in late 2019 formed a unit called Place-Based Investigations (PBI). In early 2020, PBI was investigating alleged narcotics trafficking that was centered in the West End area of Louisville, approximately 10 miles away from Taylor's home.

3.  **KYLE MEANY** was an LMPD sergeant who supervised the PBI unit. He had been employed as an LMPD officer since 2013.

4.  **JOSHUA JAYNES** was a detective in the PBI unit who, as of early 2020, had worked at LMPD for approximately 15 years.

1

5.  K.G. was a detective in the PBI unit who had worked for LMPD for approximately 8 years.

6.  On March 12, 2020, PBI, using affidavits sworn by **JOSHUA JAYNES** and approved by **KYLE MEANY**, obtained warrants to search five properties. These included four properties in Louisville's West End neighborhood that were allegedly used in drug trafficking, as well as Taylor's home at 3003 Springfield Drive, Apartment 4 (the Springfield Drive warrant). The primary target of the investigation was J.G., a man who had been previously arrested for committing drug offenses.

7.  **JOSHUA JAYNES** and **KYLE MEANY** knew that the affidavit used to obtain the warrant to search Taylor's home contained information that was false, misleading, and out-of-date; that the affidavit omitted material information; and that the officers lacked probable cause for the search.

8.  **JOSHUA JAYNES** and **KYLE MEANY** knew that the execution of the search warrant would be carried out by armed LMPD officers, and could create a dangerous situation both for those officers and for anyone who happened to be in Taylor's home.

9.  On March 13, 2020, at approximately 12:45 a.m., LMPD officers who had not been involved in drafting the search warrant and who were unaware of the false statements contained therein executed the warrant at Taylor's home. When those officers broke down the door to the apartment, a guest in Taylor's home (K.W.), believing that intruders were breaking in, immediately fired one shot with a handgun that he lawfully possessed, hitting the first officer at the door. Two LMPD officers immediately fired a total of 22 shots into the apartment, and one of those shots hit Breonna Taylor in the chest. A third officer moved from the doorway to the side of the apartment

and fired ten more shots through a window and a sliding glass door, both of which were covered with blinds and curtains.

10.     Taylor died from the wound to her chest.

Paragraphs 1 through 10 are hereby incorporated by reference into the counts set forth below.

THE GRAND JURY FURTHER CHARGES:

## COUNT ONE
*(Deprivation of Rights Under Color of Law)*

On or about March 12, 2020, in the Western District of Kentucky, **JOSHUA JAYNES** and **KYLE MEANY**, while acting under color of law and while aiding and abetting each other and other officers, willfully caused Breonna Taylor to be deprived of the right, secured and protected by the Constitution and laws of the United States, to be free from unreasonable searches and seizures. Specifically, **JOSHUA JAYNES** drafted and swore out a warrant affidavit for Taylor's home, knowing that the warrant would be executed by other armed LMPD officers, and knowing at the time that the affidavit contained false and misleading statements, omitted material information, relied on stale information, and was not supported by probable cause. **KYLE MEANY** approved the warrant affidavit for Taylor's home, knowing that the warrant would be executed by other armed LMPD officers, and knowing at the time that the affidavit contained false and misleading statements, omitted material information, relied on stale information, and was not supported by probable cause. The offense involved the use of a dangerous weapon and resulted in Taylor's death.

All in violation of Title 18, United States Code, Section 242 and 2(b).

THE GRAND JURY FURTHER CHARGES:

## COUNT TWO
*(Conspiracy)*

Beginning not later than in or around April 2020, and continuing until in or around June 2022, in the Western District of Kentucky and elsewhere, **JOSHUA JAYNES** knowingly and willfully conspired and agreed with K.G., and others known and unknown to the grand jury, to commit offenses against the United States; specifically (1) to knowingly falsify a document with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the Federal Bureau of Investigation, a federal agency, in violation of 18 U.S.C § 1519; and (2) to knowingly engage in misleading conduct toward another person, with the intent to hinder, delay, and prevent the communication of information to a federal law enforcement officer and judge relating to the commission and possible commission of a federal offense, in violation of 18 U.S.C § 1512(b)(3).

### Manner, Means, and Object of the Conspiracy

1. The object of the conspiracy was to cover up the fact that the Springfield Drive warrant affidavit was false, misleading, stale, and unsupported by probable cause, by (1) submitting a false Investigative Letter and (2) making false statements to criminal investigators.

2. It was part of the manner and means of the conspiracy for **JOSHUA JAYNES** and K.G. to adopt, repeat, and expand upon the Springfield Drive warrant affidavit's false and misleading claims in an official Investigative Letter that they provided to criminal investigators on or about May 1, 2020.

3. It was further part of the manner and means of the conspiracy for **JOSHUA JAYNES** and K.G. to call, text, and meet with each other to discuss the false information in the Springfield

Drive warrant affidavit and to coordinate their false cover story in an attempt to escape responsibility for their roles in preparing the warrant affidavit that contained false information.

4. It was further part of the manner and means of the conspiracy for **JOSHUA JAYNES** to contact other officers and pressure them to provide support for the false information in the Springfield Drive warrant affidavit.

5. It was further part of the manner and means of the conspiracy for **JOSHUA JAYNES** and K.G. to make false and misleading statements during interviews with criminal investigators.

## Overt Acts

In furtherance of the conspiracy, and to accomplish its objectives, **JOSHUA JAYNES** and his conspirators committed the following overt acts, among others:

1. In or around April or May 2020 (after the March 13, 2020, shooting of Breonna Taylor), **JOSHUA JAYNES** called J.M., a fellow LMPD officer, to try to get J.M. to say that he had previously told **JOSHUA JAYNES** that J.G. had received packages at Taylor's apartment. [In fact, J.M. had told **JOSHUA JAYNES** in or around January 2020 that he had no information showing that J.G. received packages at Taylor's apartment, and during the post-shooting call in April or May 2020, J.M. again told **JOSHUA JAYNES** that he was unaware of any information that J.G. had received packages at Taylor's apartment.]

2. After having been told by two officers from the Shively Police Department in April 2020 that J.G. had not received packages at Taylor's home, **JOSHUA JAYNES** wrote in an Investigative Letter that he had "verified through [J.M.] of LMPD, who contacted the postal service, that [J.G.] had been receiving packages at 3003 Springfield Drive #4."

3. In or around April 2020, **JOSHUA JAYNES** and K.G. included in the Investigative Letter the misleading claim that a detective "was able to verify through CLEAR, a law enforcement database, that as of February 20, 2020, [J.G.] used 3003 Springfield Drive #4 as his residence." **JOSHUA JAYNES** and K.G. both knew at the time that this statement was misleading because, as they knew, J.G. did not live at 3003 Springfield Drive in February 2020.

4. From on or about April 11, 2020, through on or about May 1, 2020, K.G. reviewed a draft of the Investigative Letter, sent to her by **JOSHUA JAYNES**, containing the claim that J.M. had verified that J.G. had received packages at Taylor's address. Knowing that the statement was false, K.G. failed to change the statement or object to it. K.G. later signed the letter, which included this false statement.

5. On or about May 1, 2020, **JOSHUA JAYNES** and K.G. signed and submitted the Investigative Letter that they had jointly drafted about PBI's investigation that led to the search warrants that were served on March 13, 2020. At the time, **JOSHUA JAYNES** and K.G. knew that the letter contained false and misleading information that purported to link Breonna Taylor to J.G., and that the letter omitted information that would have undermined the claim of an ongoing connection between Taylor and J.G.

6. On or about May 17, 2020—after media outlets reported that a Postal Inspector had announced that J.G. had *not* received packages at Taylor's address as alleged in the Springfield Drive warrant affidavit and the May 1, 2020, Investigative Letter—**JOSHUA JAYNES** texted K.G. that a criminal investigator wanted to meet with him the following day and arranged to meet with K.G. in **JOSHUA JAYNES'S** garage that night.

7. When **JOSHUA JAYNES** and K.G. met in the garage on the evening of May 17, 2020, **JOSHUA JAYNES** relayed to K.G. that they needed to get on the same page because they could both go down for putting false information in the Springfield Drive warrant affidavit.

8. During the meeting in the garage, **JOSHUA JAYNES** and K.G. agreed to tell investigators a false story, claiming that J.M. had told them in January 2020 that J.G. was receiving packages at Taylor's home.

9. On or about May 19, 2020, two days after the garage meeting, **JOSHUA JAYNES** falsely claimed to investigators with LMPD's Public Integrity Unit that, in January 2020, J.M. had told him and K.G. "nonchalantly" that "your guy [J.G.] just gets Amazon or mail packages there [at Taylor's home]."

10. On or about August 12, 2020, K.G. falsely told investigators with the Kentucky Office of the Attorney General that, in January 2020, "[J.M.] in passing" had told K.G. and **JOSHUA JAYNES** that he "verified [J.G.] was getting packages there [at Taylor's home]."

11. On or about June 14, 2022, during an interview with agents with the Federal Bureau of Investigation, **JOSHUA JAYNES** falsely claimed that, in January 2020, J.M. "made a nonchalant comment" that J.G. was getting "mail or Amazon packages" at Taylor's home. All in violation of Title 18, United States Code, Section 371.

THE GRAND JURY FURTHER CHARGES:

## COUNT THREE
*(Falsification of Records in a Federal Investigation)*

On or about May 1, 2020, in the Western District of Kentucky, **JOSHUA JAYNES**, acting in relation to and in contemplation of a matter within the jurisdiction of the Federal Bureau of

Investigation, an agency of the United States, knowingly falsified a document with the intent to impede, obstruct, and influence the investigation and proper administration of that matter. Specifically, **JOSHUA JAYNES** falsified an Investigative Letter, which he knew would be used in a criminal investigation into the preparation and execution of the Springfield Drive warrant at Breonna Taylor's home, by including false and misleading statements about the connection between Taylor and alleged drug trafficking, and by omitting material information that undermined the claim of an ongoing connection.

All in violation of Title 18, United States Code, Section 1519.

THE GRAND JURY FURTHER CHARGES:

## COUNT FOUR
*(False Statement to Federal Investigators)*

On or about May 17, 2022, in the Western District of Kentucky, **KYLE MEANY** knowingly and willfully made a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Federal Bureau of Investigation, an agency of the executive branch of the Government of the United States. Specifically, **KYLE MEANY** falsely told an agent with the Federal Bureau of Investigation that a paragraph requesting authority to make a no-knock entry at Taylor's home was included in the Springfield Drive warrant affidavit because officers on LMPD's SWAT unit had, during a planning meeting on or about March 5, 2020, asked for no-knock authority at that location. In truth and in fact, **KYLE MEANY** knew that SWAT did not ask PBI to request a no-knock entry at 3003 Springfield Drive, Apartment 4.

All in violation of Title 18, United States Code, Section 1001.

A TRUE BILL:

**Redacted**

GRAND JURY FOREPERSON

KRISTEN CLARKE
ASSISTANT ATTORNEY GENERAL
CIVIL RIGHTS DIVISION

MICHAEL J. SONGER
ANNA GOTFRYD
TRIAL ATTORNEYS
CIVIL RIGHTS DIVISION

ZACHARY DEMBO
ASSISTANT U.S. ATTORNEY
EASTERN DISTRICT OF KENTUCKY

ATTORNEYS FOR THE UNITED STATES, ACTING UNDER
AUTHORITY CONFERRED BY 28 U.S.C. § 515